NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

# IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

CHRISTIAN & MISSIONARY ALLIANCE, *Petitioner Employer*,

GUIDEONE MUTUAL INSURANCE COMPANY, *Petitioner Carrier*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

CRAIG SMITH, *Respondent Employee*.

No. 1 CA-IC 17-0045
FILED 6-26-2018

---

Special Action - Industrial Commission
ICA Claim No.  20093-210218
Carrier Claim No. GO-09-100024
The Honorable Layna Taylor, Administrative Law Judge

**AWARD AFFIRMED**

---

COUNSEL

Lundmark, Barberich, La Mont & Slavin, P.C., Tucson
By Javier A. Puig
*Counsel for Petitioners Employer and Carrier*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent, ICA*

Keist, Thurston, O'Brien, P.C., Glendale
By Steven D. Keist
*Counsel for Respondent Employee*

---

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge David D. Weinzweig joined.

---

**B R O W N**, Judge:

¶1       This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review for supportive care benefits. The issue presented is whether the evidence reasonably supports the administrative law judge's ("ALJ") award of home health care for 14 hours per day. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2       The respondent employee ("Claimant"), a minister and evangelist, conducted a traveling ministry. He and his wife worked as a missionary team for the petitioner employer, Christian & Missionary Alliance. In June 2009, Claimant sustained severe and permanent injuries when the vehicle he was traveling in was involved in a rollover accident.

¶3       Claimant filed a workers' compensation claim, which was accepted for benefits. He received extensive medical and surgical treatment. His claim was eventually closed with an unscheduled permanent impairment and an award of supportive care benefits. The ICA then entered its findings and award for a permanent total loss of earning capacity ("LEC").

¶4       The petitioner carrier, Guideone Mutual Insurance Company ("Guideone"), timely requested an ICA hearing on both LEC and supportive care. The ALJ held three hearings, and heard testimony from Claimant, his wife, his former employer, the owner of a home health care franchise, a labor market expert, and Claimant's supportive care doctor. The ALJ then entered an award for a permanent total LEC and supportive care that included home health care in the form of compensation to Claimant's wife for the daily care she provides to Claimant. Guideone

2

timely requested administrative review, and the ALJ supplemented and affirmed the award. This timely appeal followed.

## DISCUSSION

¶5        The issue on appeal is whether the evidence in the record supports the ALJ's award of 14 hours per day of home health care.  An industrially-injured claimant is entitled to receive compensation for all "medical, surgical and hospital benefits or other treatment, nursing, [etc.] reasonably required at the time of the injury, and during the period of disability."  *See* A.R.S. § 23-1062(A).    "Whether a particular type of treatment is reasonably required is a medical question and requires expert medical testimony."  *Patches v. Indus. Comm'n of Ariz.*, 220 Ariz. 179, 181, ¶ 6, (App. 2009).  It is the ALJ's duty to hear medical testimony on the necessity of the care, resolve any conflicts, and draw all warranted inferences.  *See Malinski v. Indus. Comm'n*, 103 Ariz. 213, 217 (1968).

¶6        In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings but review questions of law de novo. *Young v. Indus. Comm'n of Ariz.*, 204 Ariz. 267, 270, ¶ 14 (App. 2003).  We consider the evidence in a light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n of Ariz.*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

¶7        In this case, the initial supportive care notice awarded Claimant supportive care in accordance with the recommendations of "Dr. Duhon, Dr. Gottlieb, [and] Dr. Rowley." Only Dr. Rowley addressed home health care.  On June 28, 2013, he stated that "[f]or the next six months [Claimant] will need home health care on a daily basis in the form of a home health aide to assist with dressing, bathing and self care.  This should be reassessed after six months to one year."

¶8        The evidence established that other than a brief 10-day respite, Claimant's wife has provided all of Claimant's care, 24 hours a day, seven days a week, since his release from the hospital in late 2009.  She explained that in addition to her normal household duties of cooking, cleaning and laundry, she cares for the Claimant's colostomy bag, provides wound care following his surgeries,[1] washes him below the waist and helps him dress due to residual deficits from his pelvic fracture, and spots him for transfers.

---

[1]        Claimant testified he has undergone 34 surgeries and outpatient procedures for his injuries sustained in the motor vehicle accident.

¶9 After Claimant's claim was reopened for additional surgery and reclosed, a second notice of supportive care was issued based on the recommendations of Dr. Dohring and Dr. Rowley. Dr. Dohring reported:

> I feel at this point [Claimant] has reached maximum medical improvement. We will close his case today and return him back to his previously recommended supportive care status for physical therapy, home healthcare and all other specialties . . . . Refer to supportive care recommendations in Dr. Rowley's dictation of 6/28/13.

¶10 Following the evidentiary hearings, the ALJ explained its home health care ruling in part as follows:

> 13. With respect to the attendant care issue, the record establishes that the carrier provided home health care for a period of time after the industrial injury. Though the need for home health care was to be reevaluated at the end of six to twelve months, the record does not contain any document reflecting that reevaluation. Nevertheless, [Claimant's] wife has continued to provide wound care and care related to the colostomy, just as the home health care provider had done in the past at the carrier's expense. There is no evidence in the record that [Claimant] needs (or has needed in recent years) 24 hour per day care, but the record does establish that [Claimant] has required and continues to require certain care services which have at times in the past been provided at carrier expense through agencies, but have primarily been provided by [Claimant's] wife.

The ALJ then concluded it was appropriate to compensate Claimant's Wife at the rate of $11.56 per hour, but did not specify the number of hours per day. Addressing Guideone's request for review, the ALJ explained that "evidence in the record supports a finding that payment to [Claimant's Wife] for fourteen (14) hours per day is appropriate for the services provided."

¶11 Guideone acknowledges that "it is clear that care is indicated as a result of the industrial injury," but asserts that there is no basis in the record to support an award of 14 hours per day. In *Carbajal v. Indus. Comm'n*, 223 Ariz. 1, 1, 5, ¶ 17 (2009), the Arizona Supreme Court discussed the nature of services that fall within A.R.S. § 23-1062(A). These include palliative care services that can be performed by a home health aide such

as bathing, dressing, performing home exercises, and monitoring the claimant's activities. *Id.* at 4-5, ¶¶ 16-17. *See, e.g.*, 8 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law* § 94.04 at 94-66 (2017) (care to manage the claimant's symptoms or mitigate the effects of the injury). But the statute also includes care of a medical nature, such as colostomy and wound care, that be performed by a home health aide. Claimant's wife testified that the hospital trained her to provide this care.

¶12        Claimant testified that given his colostomy and the wound care needed for ongoing surgeries, he essentially needs someone available to care for him 24 hours a day. He explained that his condition has continued to deteriorate, requiring additional surgeries, and resulting in increased "total body impairment." Claimant's wife confirmed she is almost always with him, and that his colostomy bag is problematic and has burst both during the day and in the middle of the night.

¶13        Based on the evidence presented, we cannot say the ALJ erred in finding that 14 hours per day of home health care is reasonably required. Claimant's permanent injuries are serious, extensive, and require a substantial amount of ongoing care.

¶14        Guideone also argues its payment for past home health care should not exceed two years pursuant to A.R.S. § 23-1062.01, which states that a "health care provider" must submit reimbursement requests within that time frame. However, Guideone does not direct us to any location in the record where it presented this argument to the ALJ. *See T.W.M. Custom Framing v. Indus. Comm'n of Ariz.*, 198 Ariz. 41, 44, ¶ 4 (App. 2000) ("It is true that this Court generally will not consider on appeal issues not raised before the [ICA]. This rule stems in part from the requirement that a party must develop its factual record before the agency and give the ALJ the opportunity to correct any legal error.").

¶15        In the midst of the hearing process, by letter dated June 15, 2016, Claimant explained to the ALJ and opposing counsel that he was seeking "just and fair compensation" for his wife "in her role as my chief caregiver since my release from in-patient care on December 4, 2009." Despite that request, nothing in the record indicates that Guideone objected to that date or proposed an alternative date for commencing reimbursement. And even though Guideone mentioned "the start date" in its request for review, it did not cite A.R.S. § 23-1062.01 or any other legal authority supporting the reimbursement limitation argument it now raises on appeal.

5

¶16 Moreover, Guideone did not request that the ALJ change or vacate the start date; instead, it merely asked the ALJ to "review" it. Thus, assuming, without deciding, that Claimant's wife would be considered a "health care provider" subject to A.R.S. § 23-1062.01, Guideone has waived the argument that her compensation should have been limited to two years.[2] *See Stephens v. Indus. Comm'n*, 114 Ariz. 92, 94 (App. 1977) ("This court will not consider on review an issue not raised before the [ICA] where the petitioner has had an opportunity to do so.").

**CONCLUSION**

¶17 For the foregoing reasons, we affirm the award.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[2] We note that A.R.S. § 23-1061(J) provides that a claimant may request an investigation by the ICA into the payment of benefits, which Claimant believes are owed but have not been paid.