IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ALBERT L.,
*Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, B.T.,
*Appellees*.

No. 1 CA-JV 21-0126
FILED 4-19-2022

Appeal from the Superior Court in Maricopa County
No. JD37099
The Honorable Karen Mullins, Judge *Retired*

**REVERSED AND REMANDED**

COUNSEL

Rideout Law PLLC, Tempe
By Steven Dorr Eckhardt, Wendy Marcus
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

_____

**OPINION**

_____

Judge James B. Morse Jr. delivered the opinion of the Court, in which Presiding Judge D. Steven Williams and Judge David B. Gass joined.

_____

**M O R S E**, Judge:

¶1 Albert L. ("Father") appeals from the superior court's order dismissing him from dependency proceedings after finding that DNA results rebutted a presumption of paternity created by his signed acknowledgment of paternity under A.R.S. § 25-814(C). Because we hold the superior court lacked statutory authority to disestablish Father's paternity, we reverse and remand for proceedings consistent with this opinion.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 Erica Y. ("Mother") gave birth to a child in 2012, and, according to Father, he cared for the child as his daughter until these proceedings began. In 2014, Father and Mother filled out an acknowledgment of paternity ("AOP") and submitted it to the Arizona Department of Health Services' Office of Vital Records. Father and Mother used an official AOP form from the Arizona Department of Economic Security but left blank the box titled "Soc. Sec. No." under "Father's information." Nonetheless, the Office of Vital Records accepted the AOP and placed Father's name on the child's birth record.

¶3 In 2019, Mother and Father were arrested and incarcerated, leaving no one to care for the child. The Department of Child Safety ("DCS") then filed a dependency petition. In its original petition, DCS acknowledged that Father had "established his paternity . . . by acknowledgement of paternity."

¶4 Later that year, the child's guardian ad litem ("GAL") asked the superior court to order Father to submit to a paternity test, and the court eventually granted that request. Based on the test results, in October 2019, DCS moved to set aside the AOP, remove Father's name from the child's birth record, and dismiss him from the dependency. The GAL joined the motion, and Father objected. The court set an evidentiary hearing on the issue, which was delayed more than a year for various reasons.

2

¶5  After the hearing, the court ruled the AOP lacked the force and effect of a judgment under A.R.S. § 25-812(D), but nevertheless denied DCS's motion. In its order ("November 2020 order"), the court reasoned that, because Father failed to include his Social Security number as required under § 25-812(A)(1), the AOP created only a rebuttable presumption that he was the child's father under A.R.S. § 25-814(A)(4).

¶6  DCS then moved for a judicial determination of competing paternity presumptions under A.R.S. § 25-814 and for an order removing Father from the child's birth record and dismissing him from the dependency. The GAL joined the motion, and Father objected. After another evidentiary hearing, the court found that DCS had rebutted Father's presumption of paternity by clear and convincing evidence ("March 2021 order"). The court then dismissed Father from the dependency but declined to order Father removed from the child's birth record. Father appealed.

¶7  On appeal, this Court requested, and received, supplemental briefing about the superior court's subject-matter jurisdiction to disestablish Father's paternity in the absence of a competing claim to paternity. We have appellate jurisdiction under A.R.S. § 8-235.

## DISCUSSION

¶8  Father raises several challenges to the superior court's March 2021 order. Dispositive here is Father's argument that the court erred in disestablishing his paternity under A.R.S. § 25-814(C) without a concurrent claim to establish paternity in another individual.[1]

## I. Subject-Matter Jurisdiction.

¶9  Father asserts that the superior court lacked subject-matter jurisdiction to enter the orders regarding his paternity. He argues that legal actions to determine paternity are governed by Title 25 ("Marital and Domestic Relations") and, if no party seeks to establish paternity, those actions may not be raised in a dependency pending under Title 8 ("Child Safety"). We disagree with Father's jurisdictional argument.

---

[1] Because we resolve the appeal based on the March 2021 order, we need not address Father's arguments pertaining to the November 2020 order. *See Schwab v. Matley*, 164 Ariz. 421, 422 (1990) (stating where one issue is dispositive, a court need not reach other issues presented on appeal).

**¶10** Subject-matter jurisdiction "refers to a court's statutory or constitutional power to hear and determine a particular type of case." *State v. Maldonado*, 223 Ariz. 309, 311, ¶ 14 (2010). It is not synonymous with a "court's inability to enter a valid judgment," *see Ader v. Estate of Felger*, 240 Ariz. 32, 44, ¶ 42 (App. 2016), but rather is "the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke the exercise of that power," *Sil-Flo Corp. v. Bowen*, 98 Ariz. 77, 81 (1965) (quoting *Foltz v. St. Louis & S.F. Ry. Co.*, 60 F. 316, 318 (8th Cir. 1894)).

**¶11** Here, the superior court's jurisdiction was properly invoked once DCS filed for a dependency. *See* A.R.S. § 8-202(B) ("The juvenile court has exclusive original jurisdiction over all proceedings brought under the authority of this title except for delinquency proceedings."); A.R.S. § 25-801 ("The superior court has original jurisdiction in proceedings to establish maternity or paternity."). And, because it had jurisdiction, the superior court had authority to rule on a paternity matter relevant to the dependency. *See Maricopa Cnty. Juv. Action No. JD-05401*, 173 Ariz. 634, 641 (App. 1993) ("A juvenile court may determine issues under Title 25 that are properly before it if its jurisdiction has been properly invoked."); *see also Peterson v. Speakman*, 49 Ariz. 342, 348 (1937) (noting the superior court is one court, and "[t]he jurisdiction of the court . . . is that of the whole court, and not of one judge nor division thereof"). The court had the power to hear the general abstract question of paternity.

## II.    Statutory Authority.

**¶12** Because the superior court had subject-matter jurisdiction, the question is whether the superior court lacked authority under A.R.S. § 25-814 to issue the March 2021 order. Any order that exceeded the court's statutory authority would be voidable. *See State v. Bryant*, 219 Ariz. 514, 518, ¶ 14 (App. 2008) ("[A]n order is voidable, rather than void, when the trial court has subject matter jurisdiction but errs in issuing an order.").

**¶13** This Court reviews issues of law, including statutory interpretation, de novo. *David C. v. Alexis S.*, 240 Ariz. 53, 55, ¶ 8 (2016). Our primary task is to give effect to the legislature's intent. *See Redgrave v. Ducey*, 251 Ariz. 451, 456-57, ¶ 22 (2021). We apply the plain wording of the statute when it is clear and unambiguous. *Andrew R. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 453, 457, ¶ 16 (App. 2010). We also "seek to harmonize and attain consistency among related statutory provisions in the context of the overall statutory scheme." *Id.*

¶14        In the dependency proceedings, DCS made allegations that may ultimately justify terminating Father's parental rights. However, the superior court dismissed Father from the dependency proceedings solely based upon its finding that DCS "presented clear and convincing evidence under A.R.S. § 25-814(C) to rebut the presumption under A.R.S. § 25-814(A)(4) that [Father] is the father of the Child." Section 25-814(A) states that a "man is presumed to be the father of the child if . . . [a] notarized or witnessed statement is signed by both parents acknowledging paternity" or "[g]enetic testing affirms at least a ninety-five per cent probability of paternity." Section (C) then states the following:

> Any presumption under this section shall be rebutted by clear and convincing evidence. If two or more presumptions apply, the presumption that the court determines, on the facts, is based on weightier considerations of policy and logic will control. A court decree establishing paternity of the child by another man rebuts the presumption.

¶15        DCS responds to Father's argument that the superior court erred in disestablishing his paternity by arguing that Father "never established paternity" under A.R.S. § 25-812. While A.R.S. § 25-812(C) and (D) provide that a completed and filed AOP has the same force and effect as a superior court judgment, DCS's argument fails because it presumes Father's only claim to paternity was through the "force and effect [of] a judgment" under § 25-812. One may also "establish" paternity under § 25-814. *See* A.R.S. § 25-401(4) ("Legal parent does not include a person whose paternity has not been established pursuant to [A.R.S.] § 25-812 or 25-814"); *McLaughlin v. Jones*, 243 Ariz. 29, 36 (2017) (noting a "presumptive father under § 25-814(A)(1) must pay child support unless clear and convincing evidence shows 'paternity was *established* by fraud, duress or material mistake of fact.'" (emphasis added) (quoting A.R.S. § 25-503(F))). Thus, whether the court lacked authority to disestablish paternity pursuant to A.R.S. § 25-814 does not turn on whether Father had established paternity via a judgment under A.R.S. § 25-812 or a rebuttable presumption of paternity under A.R.S. § 25-814(A)(4).[2]

---

[2]        Father filed the AOP in 2014. If it were entitled to the force and effect of a judgment under A.R.S. § 25-812, it could be challenged "only in exceptional circumstances, such as fraud on the court." *Johnson v. Edelstein*, 252 Ariz. 230, 231-32, ¶ 2 (App. 2021) (citing A.R.S. § 25-812(E)). Because

¶16 Because testing only showed that Father was not the genetic parent, DCS has not established any competing presumption. *See* A.R.S. § 25-814(A)(2) (providing that a man is presumed to be the father of a child if "genetic testing *affirms* at least a ninety-five per cent probability of paternity" (emphasis added)). Thus, the issue is whether, in the context of a Title 8 dependency proceeding, A.R.S. § 25-814(C) authorizes the superior court to disestablish Father's paternity in the absence of a competing claim of paternity and solely based on the results of Father's paternity test. DCS argues that A.R.S. § 25-814(C) applies because the statute specifies a procedure a court should follow "if two or more presumptions apply," and implicitly acknowledges the court's authority to rule in a situation in which there is no other claim to paternity and no competing presumption. We agree that the language of A.R.S. § 25-814(C) contemplates circumstances in which there may be only one paternity presumption as between two paternity claims. That does not mean, however, that DCS's interpretation is correct.

¶17 DCS focuses on the word "if" in A.R.S. § 25-814(C), but that language must be read "in the context of related provisions and of the overall statutory scheme" with a goal of achieving consistency among related provisions. *Goulder v. Ariz. Dep't of Transp.*, 177 Ariz. 414, 416 (App. 1993), *aff'd*, 179 Ariz. 181 (1994). As part of the context, we will consider "a contemporaneous preamble or statement of purpose and intent . . . even where the text is not ambiguous." *Redgrave*, 251 Ariz. at 457, ¶ 22. Title 25's express purpose is "[t]o promote strong families" and that "absent evidence to the contrary, it is in a child's best interest . . . [t]o have substantial, frequent, meaningful and continuing parenting time with both parents" and "[t]o have both parents participate in decision-making about the child." A.R.S. § 25-103(A)(1), (B); *see also McQuillen v. Hufford*, 249 Ariz. 69, 72-73, ¶¶ 10-11 (App. 2020) (noting in the context of Title 25 proceedings, "the legislature has unambiguously expressed a preference for finality in paternity determinations — however obtained").

¶18 Statutes within Title 25 enable individuals to assume the legal duties of parenthood while gaining fundamental protections under the law. *See* A.R.S. § 8-531(4), (5) (listing rights and responsibilities of a legal custodian of a child); *McLaughlin*, 243 Ariz. at 36, ¶ 29 ("A primary purpose of the marital paternity presumption is to ensure children have financial support from two parents."); *Steward v. Superior Court*, 163 Ariz. 227, 229

we find for Father on other grounds, we need not decide whether the AOP in this case satisfied the requirements of A.R.S. § 25-812.

(App. 1989) (noting parents' fundamental liberty interest in the care, custody, and management of their child). Consistent with that purpose, Title 25 confers on the superior court "original jurisdiction in proceedings to *establish* maternity or paternity." A.R.S. § 25-801 (emphasis added); *see also* A.R.S. § 25-806 (requiring petitions to commence paternity proceedings to allege "the respondent is the father of the child or children"). The use of the word "establish" is repeated in several other provisions in Chapter 6 of Title 25, entitled "Maternity and Paternity Proceedings." *See, e.g.*, A.R.S. §§ 25-802; -803(A), -807(A).

¶19　　　　Disestablishing a person's paternity in the absence of a competing paternity claim and solely based on a negative paternity test is the very opposite of A.R.S. § 25-801's express directive conferring jurisdiction on the superior court to "establish" paternity. "Context is a primary determinant of meaning." *State v. Ariz. Bd. of Regents*, CV-21-0134-PR, --- Ariz. ---, ---, ¶ 14 (April 5, 2022) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012)). Thus, § 25-814(C) must be construed to promote the establishment of paternity and resolve competing claims of paternity. Authorizing a court to disestablish paternity in the manner attempted here, by rebutting a long-standing presumption without a competing paternity claim, is inconsistent with the context and purpose of the statutory scheme.

¶20　　　　In Title 8, the legislature created a detailed structure under which DCS, or an individual, may terminate the rights of a parent that a court has found to be unfit. Interpreting A.R.S. § 25-814(C) as DCS suggests would allow termination where a parent is the only father the child knows and has cared for a child for years, without any inquiry into parental fitness or the child's best interests.[3] While DCS has made serious allegations regarding Father's unfitness, we express no opinion on the merits of the underlying dependency proceedings. Those allegations must be adjudicated in manner that complies with due process. *See Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (holding that a parents' fundamental liberty interest in the care, custody, and management of their children "does not evaporate simply because they have not been model parents or have lost

---

[3]　　　　If we adopted DCS's interpretation, a mother who knows that her husband or ex-husband is not the child's biological father could use Title 25 and DNA testing to disestablish long-standing paternity, without any showing of parental unfitness or regard for the child's best interests. We presume the legislature did not intend such a result. *See Patches v. Indus. Comm'n*, 220 Ariz. 179, 182, ¶ 10 (App. 2009) (encouraging courts to construe statutes to avoid "absurd or unconstitutional results").

temporary custody of their child to the State"); *Alma S. v. Dep't. of Child Safety*, 245 Ariz. 146, 150, ¶ 13 (2018) (stating that a court must find termination of parental rights will be "in the child's best interests" such that "(1) the child will benefit from severance; or (2) the child will be harmed if severance is denied"); *Pima Cnty. Juv. Severance Action No. S-114487*, 179 Ariz. 86, 93 (1994) ("[P]arents with an existing parental relationship, either in fact or law, are entitled to the highest constitutional protection.").

¶21 Accordingly, we hold that, within a Title 8 dependency proceeding initiated by DCS, A.R.S. § 25-814(C) does not authorize the superior court to disestablish an individual's long-standing presumptive paternity based solely on a negative paternity test and in the absence of another competing paternity claim.

## CONCLUSION

¶22 For the foregoing reasons, we reverse the superior court's March 2021 order disestablishing Father's paternity and dismissing him from the dependency. We remand this case for further proceedings consistent with this opinion.

